We'll hear argument next today in Case 14-103, Baker-Botts v. ASARCO. Mr. Street? Mr. Chief Justice, and may it please the Court, at the end of a bankruptcy case, a professional must file a detailed fee application. Numerous interested parties may object, and the Court must hold a hearing to resolve those objections and make an independent assessment of reasonable compensation. Each of those steps is indispensable to accurately determining the professional's core fees and the estate's administrative expenses, allowing the trustee to close the case and ultimately pay the estate's creditors. Everyone agrees that preparing the application is compensable, as reflected by Section 330A6's guidance for determining the amount of that is an inseparable part of that same code-mandated process. There is no principle basis, and certainly no textual basis, for categorically banning compensation for that next step. To the contrary, the principle basis, as I understand it, is that when you prepare it, you're serving the trustee. You're serving his needs. But when, you know, he's allowing it, you're, to the contrary, acting against the trustee's interests. Isn't that a principle distinction? It would certainly not be in the vast majority of cases. For example, in the typical Chapter 7 case, the trustee hires a professional, the trustee wishes to pay the professional fully for his good work, and the debtor comes in and objects. By defending that application against the debtor's objections, the professional is serving the trustee. The same thing happened here, where the debtor objected. Okay. So you acknowledge it's okay if the trustee objects. Then he doesn't have to pay. Right? I would not acknowledge that, Your Honor. I didn't think you would. But that is the reason there should not be a categorical. But the trustee is not the estate. That's correct. And the estate wants to keep as much money as it can to give to the creditors. That's the purpose, right? Well, in this case, for example, the estate paid all of Baker Bott's core fees and wanted to pay all of those fees, and you had ASARCO coming in as the reorganized company and objecting. So, again, I don't think that's true in the vast – in many, many cases. And typically, it's not the case in the Chapter 7 case. As the National Association of Bankruptcy Trustees point out as amicus, a trustee is not going to be able to retain competent and skilled counsel if the debtor is going to be able to dilute it. Sotomayor, if you hired another law firm to fight this objection, would that other law firm have been entitled to fees, too? It would possibly be entitled to fees through 330A1B. I think in your hypothetical, you're assuming that the other law firm would not be approved by the trustee as an estate professional. So that's the on-off switch for compensation under 330A, compensation as a service rendered. So the only possible way they could be compensated would be as an expense for rendering a service to the estate professional. I just want to understand your rule completely. Anybody who prepares a fee application, an accountant, an expert, the bankruptcy court can pay all of their legal fees if the trustee has hired their lawyer? Yes. Approved their lawyer. But if the trustee hasn't, then they have to assume the cost of fighting. No, Your Honor. That's not our position for two reasons. First of all, there's two ways to get compensated under 330A. There's A1A, which is compensation for services rendered by a professional hired by the estate. And then there's A1B, which is expenses. And that's things like experts, outside contractors that the estate professional hires to help him or her do the services. So in the context of an accountant who hired a law firm to prepare and defend its fee application, it happens all the time, accountants can't do it themselves, that outside law firm would be compensable as an expense to the accountant. Now, of course, the Zarco's position would categorically ban all compensation for law firms, even those retained by the trustee that defend their fee application. It would categorically ban compensation by the accountants. And the problem with the Zarco's position is that everything you can say about defending a fee application is also true about preparing a fee application in the context of a statute. They both are paid out of the estate. They both diminish the estate in that way. They're both something that the code requires. Kennedy, if the trustee objects and there's a lengthy hearing, I take it you would still say that you get fees for participating in that hearing? Yes, that's correct. All right. So the fact that a Zarco came in is really irrelevant to this case. I don't think it's irrelevant because it shows the error of the Fifth Circuit's way in adopting a categorical rule that prohibits compensation even when the trustee wants to pay the professional the full amount. That's the only reason I really made that particular point. And that's the only argument that's before this Court, is a categorical ban under the statute on compensating the professional for defending his fee application regardless of who objects. And I think this Court has already rejected the distinction that Justice Scalia suggested between preparing and defending the fee application and its opinion in Gein where the Court said there's, quote, no textual or logical argument for treating so differently a party's preparation of a fee application and its ensuing efforts to support that application. And the Court used that. That was in the context of a fee-splitting statute, though. That's correct. And the fee-shifting context is the proper analogy here. Of course, we don't claim 330A is formally a fee-shifting statute. We're seeking payment from the estate for work that the code requires us to do as part of our work. But the fee-shifting analogy is accurate for a couple reasons. First of all, in the fee-shifting statute and in the bankruptcy statute, the professional must file an application and have his fees approved by the Court. And as in the fee-shifting regime, the bankruptcy professional's application is opened up to a wide range of objectors who are not the professional's client. So all of this leads to, in both the fee-shifting and the bankruptcy regime, a concern that the professional's fees for his core work will be diluted by the professional being forced to defend those core fees. And in fact, those concerns are heightened much more in the bankruptcy context for a few reasons. Because in bankruptcy, the fee application is far more detailed and gives far more opportunity to pick and object, and a far greater range of objectors are available. The U.S. trustee, the Court itself, the creditors, the creditors' committees, all of those can come in and object that do not exist in the fee-shifting context. And Congress recognized this concern in section 330A.3.F. by codifying the factor that bankruptcy professionals be compensated at parity with nonbankruptcy professionals. Roberts. Well, but just on the parity point, if you're not doing bankruptcy work and you send the client a bill and they don't pay it, if you've got to take litigation action or whatever, you don't get those fees back. We follow the normal American rule and you pay your own fees, and if you win, good. If not, you don't. That's right. And that would, of course, also be true of preparing the bill or the invoice, which is compensable under bankruptcy. So Congress departed from that regime. And again, it gets back to the two reasons the fee-shifting cases are analogous. Because outside of bankruptcy, a professional doesn't have to go to the court to have his fees approved. It's a structural parity difference. Outside of bankruptcy, the professional doesn't submit his application to a gallery of potential objectors. And that's why bankruptcy is structurally different. And that's why Congress recognized in Section 330A.4.A.2 that services necessary to case administration do fall within the bankruptcy court's discretion to compensate. And when you read Section 330A.6's reflection that preparing the fee application is compensable, it's clearly not authorizing compensation for preparing it. As ARCO concedes that, it's authorized under Section 330A.1a as a service rendered and it most naturally falls within Section 330A.4.A.2 as a service necessary to case administration. And that's because it assists the trustee. The trustee has to see the case all the way through to its completion. It has to make a final accounting of the case. It has to administer and close the case. And that none of those things can happen until the fee application is not just prepared but litigated. Section 330A.1.A. reflects that not only the application must be prepared, but there may be objections by either the parties in interest, the trustees, or the court itself. And then the court must hold a hearing. That's all — those are all textual bases for compensating the defense of the fee application. Those are things that the code requires, and they're all compensable for the same reasons as compensating the preparation of the application. Ginsburg, do you have a position on enhancements? If the creditors say that enhancement is — you did a good job, but it's not worth the enhancement, is defending the enhancement also under your rule compensable? We believe it would be compensable. In the sense that it passes by the minimal compensability threshold that puts it into bankruptcy court discretion. Now, bankruptcy courts must consider the A3 factors in determining whether that will actually be compensated in any amount. And courts consider, for example, the nature and value of the service. A court could reasonably conclude in its discretion that the nature and value of seeking an enhancement is not the same as the nature and value of defending the core fee application. Many courts have reached that conclusion. At the end of the day, that's where the courts came out here, and we didn't — we didn't challenge that on appeal. Breyer, you practice in bankruptcy. I mean, you know it pretty well, because what I was trying to think of, which is really ghastly on the side, but the phrase, likely to benefit, it has — it says likely to benefit. Now, it seems to me there must be instances where you, representing the debtor, hire accountants or various others to do technical work conveying and we're in favor  And in fact, it's quite clear that it won't mean more money for the debtor. It will mean less money for the debtor, because it will discover all kinds of assets they didn't even think the debtor had. But that's part of your job. Correct. And you do it. It benefits only the creditor. And I take it it's rather clear you get compensated for that. Yes. Is that right? Am I just guessing? Yes, that's absolutely correct, Your Honor. And that's why there are two prongs within section 330A4A2. Congress recognized that not everything a professional does is going to produce an immediate direct benefit to the estate. And the legislative history we discussed at page 37 and 38 shows that Congress added the prong compensating tasks that were necessary to case administration. Ah, well, then you're in trouble, because if all those things — I mean, there are a set of things such that when you carry them out through accountants or conveyors or others will, in fact, cost the State a lot of money, possibly more than they ever dreamt, and yet it's part of your job. Now, if that's not considered as being of benefit to the estate, but rather part of the administration of the estate, then I don't see how this falls within benefit to the estate. I mean, if you're really making that distinction, that's administration of the estate, then this would have to be administration of the estate. But this isn't administration of the estate, and therefore it's left out. We agree that this is administration of the case for the State. Well, you're saying this is administration. In other words, you're not saying it falls within A. You're saying it falls within B. It falls within either one. We think the most natural home for it is necessary to the administration of the case. And Congress, the structure of Section 330A4A2 reflects that the professional's service need only be necessary to the administration of the case or beneficial to the estate, because Congress recognized there are going to be a lot of things that a professional has to do, as Justice Breyer said, that may cost money in the short run, but they're necessary to carry out the administration of the case. We think that's where preparing the fee application comes in under A.1 and A.4A2. And the very next inseparable step is defending the fee application. Sotomayor You're ignoring one important aspect of difference, which is in everything else you're acting for the estate. When you're defending fees, you're acting for yourself. There is a self-interest involved. Because you could just give up on the objections and walk away. The only reason you're fighting them is because it puts more money in your pocket. Not because it puts more money in the estate's pocket. Yes, but all of those things would be equally true of preparing the fee application. The professional could just work pro bono or could decide to discount 20 percent of its rates on the fee application. All of those things are — Zarco has tried to say that preparing and defending the fee application are adverse to the estate because it takes money out of the estate. Well, that cannot be the test. Kennedy Well, except that preparing the fee application, A, is specifically allowed by statute, and, B, if they compensate you for that, there's — then you'll do a very careful job and there will be less necessity to have to defend it. So there's certainly a rational reason for the distinction. Well, let me take that question in two parts, because I think if Congress drafted the statute to say preparing the fee application is compensable, then we would have a very different case. But it didn't say that. It said any compensation awarded for preparing the fee application shall be awarded at this rate. So it presupposed that preparing the fee application was authorized under Section 330A1A, as Zarco even concedes on 12 — page 12 of its brief. So you can't draw any negative inference from the fact that it's mentioned for the purpose of limiting it that defending the fee application would not also be compensable. But to your second point, Your Honor, we agree Congress wanted to encourage people to do a careful job preparing the fee application. Baker-Botz did that here. But that did not stop a Zarco from coming in and mounting a barrage of objections that eat up professional fees. So just the careful preparation of the application doesn't solve the question, and that's why Congress codified Section 330A3F and the parity factor, and that's why bankruptcy courts for decades have been responsibly exercising the discretion that Section 330A1 gives them. Congress could have enumerated all of the tasks that are compensable in bankruptcy, but it didn't do that. It's — Roberts. But then people know, I mean, the American rule in the legal area is very fundamental. And it strikes me bankruptcy is one of those areas where they go in considerable detail, telling you who pays what and when you can get it. And just like you say here, you get compensation for preparing the fee, it's at this particular level. And to say that somewhere in all this, you sort of cut and paste these things together, and you say, oh, there, it shows that they meant fees on fees to be awarded, it seems to me that if they wanted to go against the basic American rule, it's the American rule, patriotic, they would have spelled that out a little more clearly. Congress certainly could have done that, but that's simply not the way it wrote 330A. You're right, Your Honor, it listed in many other statutes nine options for things. But in this, it just said courts may award reasonable compensation for services rendered with very narrow and expressed prohibitions. The Fifth Circuit erred by superimposing a categorical ban on that flexible statute. And if I could reserve the remainder of my time. Roberts. Thank you, counsel. Mr. Fletcher. Thank you, Mr. Chief Justice, and may it please the Court. We agree with Petitioners that when a bankruptcy professional seeking compensation under Section 330A successfully defends its fee application, the bankruptcy court may increase the amount of the award to compensate for the time reasonably spent on the fee defense. But we reach that result for a somewhat different reason. In our view, preparing and defending a fee application are not themselves services rendered for a client within the meaning of Section 330A1A, and they are not independent grounds for compensation. Instead, compensation for the successful defense of a fee application may be appropriate because it ensures that the professional receives the statutorily prescribed reasonable compensation for the services it rendered in the underlying bankruptcy case. Breyer, we don't think it's viewed as being subject to the 4A at all. 4A is not subject to 4A at all. I mean, 4A forbids. It says you can't, cannot allow compensation for, and then, you know, it has the list there. So how do you, where do you find the authority to give this to them? So, Justice Breyer, 4A, which appears on page 3A of the Red Brief Appendix, describes limits on compensation for services. Our view is that when you are preparing and defending your own fee application, that does not fall within the category of services at all. So where is the authorization to give it then? In the authorization in Section 330a1a, that says you can allow reasonable compensation for the underlying service that the bankruptcy professional has rendered in the bankruptcy case. So here, for example, Baker Botts prosecuted the fraudulent conveyance action, among many other things. And the Bankruptcy Court applied the Lodestar method, and it determined that reasonable hours times reasonable rates required a certain amount of compensation in order to make Baker Botts. Breyer, where does it say that you can get the money that's necessary for you to get the money you pay to get the reasonable compensation? Where does it say you can get that? There is no explicit provision. I mean, suppose that you had to go through enormous trouble to get what they paid you. They paid you in, you know, some kind of Moldavian bonds or something. You know, you imagine all kinds of circumstances where it costs a lot of money to get the money they paid you. And I just wonder where does it say you can do that? Well, Justice Breyer, what I think is different about this is that the things that you have to do to get paid when you're a bankruptcy professional that we're concerned with here are things that are creatures of the bankruptcy system itself and 330A itself. Section 330A says if you're a professional and you want to get paid reasonable compensation, you have to submit a very detailed fee application. And then in order to ensure that that application meets the statutory requirements, we're going to open it up to scrutiny by the judge, by the U.S. trustee, and by the parties in interest, and allow them to raise objections. And all of that — Why isn't that in the administration? I'm sorry, Justice Sotomayor. He claims it could be on either a service or a benefit or a need in the administration of the estate. So argue is that the problem with it is that sort of Section 330A1A is the sort of starting point. And it says reasonable compensation for actual necessary services rendered. And then A4 limits which services are compensable. It says in order to be compensable, you either have to be necessary to the administration of the case or for the benefit of the debtor. We don't think that preparing and defending your own fee application is a service rendered at all. And so we don't think it's subject to the A4 limits. Instead — Wait, what? I'm sorry. I was just going to say, instead, we think the question that bankruptcy court should be asking is, do we need to provide some additional award to make the professional whole for the extra time and cost that they had to go through to vindicate their right to get their award of compensation for the underlying services? It sounds like a policy judgment. You're basically saying it's not in the statute, but this is how we do it. And as Justice — as the Chief Justice pointed out, normal attorneys outside the bankruptcy court don't get compensated for fee disputes. Well, we do think it makes good sense, the rule that we're advocating. But we also think it's grounded in the statute and in the way that this Court has addressed other statutes that also provide for awards of reasonable attorney's fees. Why isn't the problem here better dealt with by sanctions? If a party like ASARCO makes frivolous objections, then they — then sanctions can be imposed on them, and the fees fall on the party that caused the problem, rather than on the estate. I absolutely agree, Justice Alito, and we argue in our brief that if a bankruptcy court is in a situation where the objections that were raised are not merely meritless but actually sanctionable, the better course would be to impose sanctions precisely because that puts the burden of the litigation on the party that raised the frivolous objection, rather than on the estate. But we think that there can be a broad range of objections that, while not frivolous or not sanctionable, are still found to be meritless, and that unless the professional is compensated for the time it has to spend in responding to those objections, its underlying — its award of compensation for its underlying services is going to be diluted below a reasonable level. No more so than the lawyer who submits a bill outside of bankruptcy to a client, and the client objects, and the lawyer has to — has to litigate. Would you say that dilutes the lawyer's recovery? No. I assume that the lawyer's fees are set at a high enough level that it — that they take into account the fact that sometimes he will have to litigate to get the fees. That's true. And why can't bankruptcy lawyers do the same thing? Well, I think that would be contrary to the policy of the — of the bankruptcy statute and Section 330A in particular. Why? Because the problem that we're dealing with here is that it's true that litigation can arise between lawyers and clients over fee issues. Right. But the Section 330A creates a structure where it's not just your client that you have to please, and the showing that you have to make isn't just that I performed services that are within the terms of our contract. You have to satisfy the bankruptcy judge and are subject to objections not just from your client, but also from the U.S. trustee and from lots of other parties in interest. And they can object not just on the grounds that you didn't perform within the meaning of the contract, but also on the grounds that you didn't satisfy any of the many requirements of Section 330A. And we think that because that imposes sort of extra costs on bankruptcy professionals, the reasonable approach and the approach that's consistent with the way that this Court handles and others have handled the same sorts of costs that are imposed on attorneys seeking fees under fee-shifting statutes is to say that when you successfully defend your fee application, this doesn't apply when you fail. We don't — we very strongly believe that if you are unsuccessful in defending your fee application, you should not receive an additional award. Breyer. What was your reason for not going with the administration of the estate? And my intuitive judgment of it, which is pretty not totally informed, of course, is there are loads of things that lawyers do who represent trustee — who represent debtors that will cost the estate a lot of money. And you can't say all of them are for the benefit of the estate. And there are loads of things they do to help administer the estate and hire all kinds of people. And paying their fees is part of the administration, I would think, normally. And why don't you see the paying of the lawyer as part of the administration of the estate? And if you see that part as part of the administration of the estate, then you would see that the administrative expenses necessary to secure that payment are part of the administration. I mean, so you had some reason over there in the Justice Department of saying, no, we don't follow that route. And I'm not — and so that, of course, that creates a difficulty, because I think, well, if your judgment is don't follow that route, then I better be careful about following it myself. And you know more about it, in a sense. So explain that to me. Well, Justice Breyer, we basically take an earlier turn. In our view, you don't get to A-4 in asking about the preparation and defense of a fee application, because A-4 tells you which services are compensated. No, I understand your argument. And all that's true about it. But I just wonder, you're studying this, you're trying to develop a position, and for some reason or other you rejected what they started out with, that this falls within 4A21 or 2, and I wondered why. So I think if you were going to — if you disagree with our position, and your view is that this is a service, and so the question is, does it fall within either of the categories under Section 4 that make it compensable, we think, agree with Petitioners that the stronger basis is to say, as you say, that it's administration. You offered a benefit. You know that. I already can see that. I just wondered why you rejected. You had a reason for not doing what seems linguistically the simplest thing and say it is part of the administration. You had a reason, and I want to know what the reason is, if you can tell me. Well, it's because linguistically, I don't want to belabor the point, but just linguistically, we don't think it's reasonable to describe this as a service rendered, and so we don't get to 4A at all. But you only ask about administration of the case if you decide that it's a service rendered, right? Section A4A says the Court shall not allow compensation for services that were not reasonably likely to benefit the estate or that were not necessary to the administration of the case. Our view is that defending your fee application isn't a service that you're rendering to the client at all, and so you don't ask these questions. But I can also answer, because if you disagree with us about that, and you think it is a service, and you think it is subject to the agency. Is there another part that says it's service to the estate rather than service to the case or something like that? It's the term as used in 330aA1a, which describes compensation for — reasonable compensation for actual necessary services rendered by a trustee, an examiner, or a professional person. I think the most natural read. Yeah, okay. I see. Thank you. But just to answer the question that you were posing before, you know, why did we — why are we hesitant to say that this is a service that can be compensable if it's reasonable or necessary? It's frankly because ordinarily services are compensable whether the attorney wins or loses, and we are very concerned about making sure that people don't get paid for unsuccessfully defending their fee applications. And that's what's led us to the decision we've taken. Thank you, counsel. Mr. Oldham. Mr. Chief Justice, and may it please the Court. Section 330a of the Bankruptcy Code compensates all types of professionals for their services rendered for the estate under Section 327a. But when adversarial fee litigation arises and a professional either hires a lawyer or just happens to be a lawyer and engages in purely self-interest fee litigation work at the expense of the estate, that is not a service rendered on behalf of the estate within the meaning of Section 330a. There is simply nothing in the statute that authorizes estate funds for a professional to engage in self-interested litigation, particularly in light of the American rule, which requires and for 200 years plus has required that Congress speak clearly when it wants to reallocate the costs of litigation. And I'd like to start— So how does the fee fit into this? I'm sorry? The fee, the fact — the fee preparation fee thing. And I want to go straight to that question. Justice Sotomayor and Justice Kennedy also put their finger on exactly the fundamental distinction between preparing a fee application and litigating over a fee application. And it's that when an accountant, for example, goes and hires — excuse me, does accounting services and then provides an itemized bill to explain to the — to their client why they are charging what they're charging, that is a benefit to the trustee. The please remit to line may not be a benefit, but certainly the itemized — itemization in that bill is a benefit to the trustee and to the estate. And at that point, they're still on the same team. But when an accountant then gets into a fee dispute and has to go hire his or her own lawyer and is in litigation against the estate, they're not on the same team anymore. There is no sense in which at that point in time the accountant is serving the estate. And I think that fundamental difference matters textually under Section 330A, and it's very significant under the American rule, because— Ginsburg. Why aren't they all tied together? So you recognize that the application for the fee is compensable. Correct. It's like the opening pleading. Then the objection is the answer to the application, and then the response to the objection is the defense of it. But it seems to me it's all one package, that the application, and there's the answer to the application, and then there's a reply. Why don't those three things go together? Well, I don't think they go together because Congress didn't put them together. What Congress authorized under Section 330A.1, especially when read together with Section 327A, is that professionals are entitled to compensation when they're working for the estate. But when professionals have hired their own lawyers or happen to be lawyers and are litigating adverse to the estate, that is not — they're not on the same team anymore. And so under 330A.1 and 327A, Congress has just simply not allowed compensation for that, which is the same as it would be outside of bankruptcy. And all we're asking for in this case is the same rule that generally applies outside of bankruptcy. Because outside of bankruptcy, the American rule controls and says that if you get into a fee litigation dispute with your client, then you pay your own way. And so the same rule should apply in bankruptcy. And I want to address why Congress might have authorized compensation for preparation services inside the bankruptcy context when that also is not compensable outside of the bankruptcy context. And that is because certainly in 1994, when Congress enacted Section A.6, there's a vast difference in the amount of time and the amount of effort that goes into putting together a fee application in bankruptcy and putting together a bill for the client. Now, certainly, as time has gone on, clients require more and more detail in bills, and that difference might be diminished. But there is — because in bankruptcy a fee application is required to be filed, it made perfect sense for Congress to come in in A.6 and say, you get compensated for that. But what's not different between bankruptcy practice and outside of bankruptcy practice is fee litigation. When fee litigation arises, the American rule applies and says inside or outside of bankruptcy, you pay your own way. And so Congress did not need to say anything different about that in Section A — in Section A.1. Roberts. Roberts. Do lawyers these days actually charge private clients for fee preparation? No. Well, there might be some extent to which overhead accounts for things like that, but certainly no lawyer is going to put on a bill, you know, time spent preparing this bill. But the fact that they're not charging for it doesn't mean that it's not a benefit to the client. Because, again, when a — I think most clients, when they get a bill and see that they have to pay, say, $100,000, it's a pretty good benefit to them to know why they have to pay $100,000 and to be able to object if they feel that there's, you know, an objection warranted to that bill for $100,000. Well, I've been out of practice for half a century, but my thought was that lawyers do charge for the amount of time preparing the bill. Maybe I'm wrong about that. Well, again, I think we can check it out. I think the only sense in which lawyers do that is to the extent that that is built into overhead. But I don't think that generally there's a practice otherwise of lawyers marking down their time for it. And I think that would probably be a shock to most clients to hear that. You ought to think about it. Is there any writing that says that when lawyers, outside bankruptcy, determine their fee structures, that they include reimbursement for the risk that they might have to go in the court to defend it? I've never heard that. Well, and we cite Gibbons-Grable case in our brief, but there's a number of things that go into, you know, rate setting for law firms, and one of them certainly is a risk of nonpayment. Another one is a risk of collections. If you have a particular client where you're afraid of collections, you might also want a retainer and things like that. But, yeah, rates account for a variety of things like risk of nonpayment and risk of collection. And I think that goes to an important point about bankruptcy practice, which is that bankruptcy lawyers use nonbankruptcy market rates. And so to the extent that they are using a nonbankruptcy market rate, they're already getting some, you know, some amount in their rates that accounts for the risk of dilution. In that theory, I mean, if you're supposed to get some fees, say $100,000, and in that fee is various risks of the extra money it will cost to collect, or the extra risk of you won't get it, you'll only get half, and you set the rate at $100,000. And so now a different risk is eventuated, namely, you had to go to litigation. And that wasn't in the $100,000. Well, then, if it's reasonable and everything, why shouldn't it be? I mean, why isn't it? You're trying to, in that $100,000, give the employer something for their time and their effort and also compensate certain risks. And here was one that wasn't in the $100,000. It turned up later, but how would you draw a line between some and the other? I think that's the government's theory. That's right, Your Honor. And I think the American rule draws the line. Because if it were the case that any time a damages award or any time a fee award had to be defended, therefore we need to give them more, the American rule wouldn't exist. Well, no, of course it doesn't exist, you're quite right, outside of bankruptcy. But now you're saying that the $100,000 does include all kinds of various payments for things that might make it more expensive to get the money. And what I don't see is saying some and not others. Well, I think this is just one of them. I mean, that you have to go into court and litigate is just one of them. You wouldn't object, for example, if the fee were or the judge says, look, we're going to give the firm $120,000. Why not $100,000? Well, you know, there are risks in this. And one of the risks is they're going to have to go to court and somebody will sue them and they have to go litigate that. So we'll give it to them up front to pay for the risk, just as you pay for the risk of nonpayment. Well, I think we would object to that, Your Honor. And I think that's because if the conscious decision is made that $100,000 is reasonable compensation for the services they're about to render. No, no, it's not. Actually, only 90 is. But it's reasonable compensation because 10 compensates for risks, such as risks of nonpayment. Am I being clear? Do you see where I'm going? No. I do, Your Honor. Well, he does. If I can make two responses. The first is that, you know, building in for certain risks in a rate is one thing, and the way that the bankruptcy system accounts for that is it looks to non-marketing, non-bankruptcy. Maybe this is not worth it. That was my question. Can you tell me, if a distinguished law firm represents a trustee in bankruptcy, does the law firm charge its regular rate? Yes. Generally speaking, they will. The same rate that it would charge to a non-bankruptcy client. That's correct. I mean, Congress, you know, wanted parity in Section 330A, and so generally speaking, what Congress effected in 1978 was to make clear that bankruptcy lawyers can get the same market rates that they would get outside of bankruptcy. In the payroll, you agree, don't you, that in this system a court can do enhancements? Yes? Yes, that's correct. I mean, well, that's not been certainly disputed in this case, yes. Yes. So some of the things that we've said are permissible for enhancements are exceptional delays in payment, extraordinary outlays of expenses, and unusually protracted litigation. Okay? That those count as enhancements. We said that in Perdue v. Kenny A. Why isn't this just like that? Well, I guess there's two responses to that. One is that when you're looking at enhancements, and the question when that was litigated below is not whether enhancements could be authorized, but instead what the proper test was for enhancements in the bankruptcy context. Here, the whole question is, under Section 330A.1, has Congress even authorized this? No, no, no. But I'm proceeding on the assumption of the SG's assumption that what we're trying to do is to get a reasonable rate for the services that clearly have been authorized. And the question is, what's a reasonable rate? And it seems to me that what this statute does is to say reasonable can include, like, lots of things. It's highly discretionary, right? And then on top of that, you know, included in what is reasonable is this idea of sometimes you can do performance enhancements. But we haven't said performance enhancements are just for super-duper work. We've actually said performance enhancements are for things like unusually protracted litigation and lots of expenses and exceptional delays, sort of like this. You know, this is just an expense of your work is having to go after the fees. So why doesn't that get into the mix, too? Well, I would agree with your characterization of the government's position that it is effectively authorizing a broad scope for bankruptcy courts to just give enhancements. That is effectively what they're arguing for. If I could respond to the government's position, because I think there's at least three things wrong with it. First is textually, the text simply will not permit their position. No, it does, because the text just says reasonable. And then the question is, what's reasonable? And reasonable can include, you know, you're getting the same hourly rate as some other lawyer, but reasonable is also you had to do this over a very extended period of time, and reasonable is also, boy, you had to spend a lot of money in order to get them to pay you anything at all. All of those things count as what's part of reasonable. Well, and if I could make one more point on the text, Section 330a.1, if it just said reasonable, that might be the right answer. But it says reasonable compensation for services rendered. The government agrees with us that fee litigation work is not a service rendered. So when Congress said that it's reasonable for all the other work you're doing, but then everything else goes into this question of reasonable, right? You know, I'll give you a hypothetical. Suppose I hire somebody to shovel my driveway, and I say I'm going to give you reasonable compensation, and everybody knows that it's $10 an hour to hire my driveway, right? That's the going rate. But then I say, oh, did I not tell you, did I not tell you I'm going to make you go down, come down to the court so that I can pay you the $10? And that costs another $5, all right? Now, it strikes me that if somebody said what's reasonable compensation now, it would be $15. It wouldn't be $10. And it's the exact same thing here. It's like by the time you go through all this stuff that you have to go through to get paid, you should get paid more. Well, and to respond to that hypothetical, I think the difference is under – in your in your story you said you're going to get, or you told your – whoever's helping you, I will not pay you for bringing it to the courthouse, that is not something I pay for, but then turning around and nonetheless saying, but you can get paid for  That's effectively... Kagan But it doesn't say you can't get paid for it. There's no exclusion. All, you know, you know, I think you and the SG agree, it's – we're not counting this as the service. What we're saying is you have to be reasonably paid for the obvious services that you have performed, shoveling my driveway. And in my – in my hypothetical, that means you also have to be paid for the cab fare. And similarly here, it means you also have to be paid for the cost of, like, making them sign a check to you. Well, and again, textually, I won't belabor it, but textually I think it disassociates reasonable compensation from forced services rendered. I don't think textually that that works under a fair reading of the statute. But just to go beyond the text, the argument... Kagan No, but it doesn't have to go beyond – I mean, I just don't understand what that means. It's this – it's the clear service rendered, it's shoveling my driveway, it's doing the work for the estate. What counts as reasonable? What counts as reasonable is not just the hourly rate, but all the things I've put you through to get the hourly rate. Let me give you two other responses to that. One is that that argument is really just a straight shot at the American rule, because it's true whenever there's a damages award, that if a damages award is given for, say, a million dollars, and you have to spend $100,000 going to defend that, every damages award will be diluted by that $100,000. But this Court has said... Kagan But here's the problem, I think, with that response. And it's a reasonable response, but we're already out of the American rule here. I mean, the bankruptcy system puts you in a different universe, in a statutory universe, and the question is, what do those words of the statute say? It's not what would exist if the statute didn't exist. Well, the American rule applies to litigation. And so obviously, in bankruptcy, you have some litigation, you have some non-litigation. But when you have a fee litigation matter arise, the American rule certainly applies. And Section 330 doesn't, because it exists, doesn't mean the American rule is, you know, tossed out the window. The American rule still controls, and you have to look at what Congress actually authorized. And so I think, for example, the Court's decision in Cooter v. Gellar... Kagan But the American rule can't trump the statute. The statute has to trump the American rule. And if the statute says reasonable compensation for services rendered, the obvious services rendered, and the only thing that counts as reasonable is taking into account things like how protracted the litigation is and how much risk you've had and the exceptional delay, and the fact that you've had to contest a lot, a lot, a lot of meritless objections, all of those things make for something, go into the question of what's reasonable. They don't have to. I mean, in 90 percent of the cases, it might be that it's like, no, that's just a normal part of the process. But in that other 10 percent where it's not a normal part of the process and you wouldn't be reasonably paid unless they were included, it seems to me the word reasonable demands that they be included. Well, and I think if that's the rationale, then this Court's decision in Cooter v. Gell would have come out the other way. That case dealt with whether under Rule 11, an award for a reasonable attorney's fee, or under Rule 11, whether you can get the cost for defending that on appeal. And the Court said no in interpreting that statute. And so that's why it's not a reasonable part of the process. Scalia, I was thinking the same thing. There are other statutes that provide, that undo the American rule, and they say you're entitled, if you're victorious, to reasonable attorney's fees. Do they usually include fees for getting the fees? Under classic fee-shifting statutes where Congress – the answer is yes. In a number of those cases, courts have said you get your fees on fees, but those statutes are very different textually and I think in their rationale. Those statutes say that you get your reasonable attorney's fee incurred in an action. And so fees on fees, when you have a dispute in that action, fit within that express authorization by Congress. It is fees incurred in that action. So textually, that's very different from Section 330. But I also think it's very, very different when you're thinking about the purpose of those fee-shifting statutes. In the fee-shifting context, what you have is an award to a private party who has vindicated their statutory rights, and the award is to that party. There's an award of attorney's fees on top of that. And throughout that process, the award comes from the opponent. And so you never have the dynamic that you have in the bankruptcy context where the lawyer and the client get on opposite teams. They're always on the same team. They're fighting for an award. They're fighting for fees on fees. And they both benefit by the more, you know, fees that they get. That's fundamentally different from Section 330, which is a very limited authorization that says it doesn't depend on success in litigation, because that's not the rationale for compensation. The rationale for compensation is that you provide services that benefit the estate or that are on behalf of the estate. But because the estate's going to pay no matter what, you have this dynamic where when fee litigation arises, the professional is suddenly on the opposite team of the estate, because it's always going to be at the expense of the estate.  I'm sorry? Sotomayor, do you practice in bankruptcy? Yes, Your Honor. And do you happen to know whether fee litigation is more common in bankruptcy than other fields? Well, there have been some studies that have tried to address that and to see whether – I mean, I think the argument that we've seen is more of a logical one, that there are more potential objectors in bankruptcy because a party has to file their fee application and theoretically more people get to review it. But I think there's a very strong argument that some courts have accepted that outside of bankruptcy practice, there's a paying client in every single case who has the full incentive, because they're footing the bill, to study and object and litigate if they want. And I think it's the rare case outside of bankruptcy and it's probably the rare case inside of bankruptcy where you have full-blown litigation, but it certainly happens in both contexts and outside of litigation. And all we're asking for is for the same rule to be in bankruptcy as is out of bankruptcy.  Well, all right. But if you look at the fee-shifting statutes, we looked up a lot. We found quite a few which say the court can award a reasonable attorney's fee. Correct. It's broader than here. But the words, basic active words are reasonable attorney's fees, and almost all of them have been interpreted to allow a compensation for the reasonable fee. So they throw that in. And so they're accounting it as part of the reason they're accounting it as part of a reasonable attorney's fees. And here, reasonable attorney's fee is the same. That language is the same. Well, it's reasonable compensation. For services rendered, Your Honor. Here it is, a reasonable attorney's fee. God, it's hard to make a lot out of that. Well, when you excerpt just those parts, I agree with you, but I think you have to look at the full language, which is in the fee-shifting context, it is reasonable attorney's fees, and then it usually says incurred, and then it talks about a civil action, like in the Jean case, the Equal Access to Justice Act. It says fees incurred in a civil action. Well, it's within the express authorization to get fees on fees there, because in that civil action, if there's a fee fight, fees were incurred in that civil action. So if Congress, in Section 330, had said, instead of what it did say, if it had said professionals shall get reasonable attorney's fees in the bankruptcy proceeding, then that might be a different case, because there you're saying anything that happens in the bankruptcy proceeding, you get compensation for. Congress did that in the Equal Access to Justice Act. Breyer. If it happens later, everything is closed, and they discover that through some odd thing, they have to spend $10,000 to get the $90,000 that was awarded to them, any authority on that. They go back to court and say, Judge, I want $10,000 more. He says, but the case was closed. He says, yes, but I had to spend the $10,000 to get the $90,000. If there was such a case, one of you would have found it, or somebody would have, I guess. Well, if you're asking, I mean, certainly the bankruptcy court maintains some jurisdiction for a party to go back and look. Just under all these other statutes, there's so many attorney's fees statutes. There are, and let me just say that if we're going to, you know, sort of think about what rule might make sense, I think it's important to remember that the fee-shifting statutes, just like Your Honor's talked about, where it's true fee-shifting, that is, there's a dispute that arises, the loser has to pay the, you know, the attorney's fees for the winner. Congress used that in the bankruptcy code. For example, in automatic stay, if there's somebody that commits a willful violation of the automatic stay, Congress identified that particular dispute and said that the loser in that particular case should have to pay it to the winner. And so if we're thinking about what rule makes sense, I think the government put their finger on it in their brief and talking about it today, and this goes to the question that Justice Alito asked about sanctions. What would make far more sense is for Congress to have come in and created a true fee-shifting in which it said that if there's going to be a dispute over a, you know, over a fee application, then maybe the, you know, prevailing party should have to get the attorney's fees from the loser. Congress didn't do that here. There's nothing like that under Section 330 or any other statute. Instead, what Congress did is it authorized compensation to a professional for the work that they do for the estate. And I just want to emphasize, too, because I've heard today the suggestion that our rule is a per se rule, and that's not at all true. We're not saying that professionals can never get their fees, and we embrace the discretion of bankruptcy courts to authorize fees under the longstanding exceptions to the American rule for sanctions such as for frivolous conduct or for bad faith litigation misconduct. The argument has been made that those are, you know, too exceptional, but outside of the bankruptcy context, those longstanding exceptions to the American rule have stood alone as the only exceptions to the American rule, and there's never been any suggestion at all that those are not sufficient outside of the bankruptcy context. And so I don't think there's any reason for a special rule just in the bankruptcy context. I think it's also really important to keep in mind that Section 330A is not just for attorneys. It's for all professionals. And so in the context of, say, an accountant that has to go hire their own lawyer, this Court's decision in Lamy made very clear that you can only get compensation under Section 330A if you're approved under Section 327A for employment. It would — it would candidly just go straight through that decision if it was okay for a Section 327A professional to nonetheless go hire somebody, have them do professional services, and then just count it as, you know, the accountant's own professional services, or as was suggested today, to simply call professional services a necessary expense, which goes against what Congress said in Section 330A, 1a, and b, where it made a very distinct difference between a necessary expense and a professional services. And so there's — there's — the cases that have talked about this issue, about whether an accountant can hire a lawyer and get paid, have — have — more of them have said exactly what this Court said in Lamy, that you can't do that. Section 327A is the sole gateway to compensation for those professionals under 330A. The only exception that some courts have identified, which we think would be inconsistent with Lamy and with Section 327A, is where there's an engagement letter between the Section 327A professional and the debtor, where the debtor has agreed that the Section 327A professional is allowed to go and hire others to do particular work. And that — that, again, we don't think is sufficient, but that is a different context than — than this case. If there's no further questions, thank you. Roberts. Thank you, counsel. Mr. Shreve, four minutes. Thank you. The Bankruptcy Code uses broad, open-ended language and commits these questions to bankruptcy court discretion, and that's no different than the fee-shifting statutes. We've said — we've heard from my friend on the other side that this is a direct shot. I want to answer his last point. Why — why does it make any sense to say that the lawyer can — can get — make his fee reasonable by getting his litigation expenses, but the accountant, who's also entitled to reasonable fees, cannot, if he has to sue, he has to pay his own lawyer? And you — you don't assert that that — that that is compensable, do you? We — we do assert that would be compensable either as an expense to the accountant or it could be included as part of the accountant's reasonable compensation for his underlying services on the bankruptcy as the government argued. Oh, you do? Okay. I didn't realize you — you — Yes, we've — You said earlier the trustee had to approve it, and I'm wondering how the trustee could approve that, because it's for the benefit of the accountant, not the trust. The trustee would have to approve if the — if those services were to be directly compensable, not if they were to be compensated as expenses or as part of the underlying reasonable compensation of the accountant. I think the hypothetical was you have an accountant who is already a 327A professional and it has to hire a lawyer, as ARCA wants to — to force that accountant to eat those  Are — are there case authorities supporting the answer you gave? Yes. The trustee has to make sure that those costs — Yes. We — we cite one that surveys the entire case law in this point in our reply brief. I believe it's footnote 4. To get back to Justice Breyer's question, you cannot read services in isolation. You can't read services rendered in isolation from the rest of the statute. A4 recognizes that there are services necessary to case administration, and A3C recognizes there are services that are beneficial toward the completion of the case. My friend on the other side read in a word. He said services to the estate. It doesn't say that anywhere in the statute. It could be a service to the court. It could be a service to the trustee, which must administer and finally close the case. Except that in Woods, looking at the predecessor statute, which also talked about services rendered, we held that the phrase, And I'm glad Your Honor brought this up, because the idea that litigating a fee application is adverse to the estate cannot be right. The code requires you to litigate the fee application if it's challenged. Now, think about what happens if we file an interim fee application under Section 331.  The second somebody objects, and we have to respond to that objection, ASARCO's position is we're immediately adverse to the estate and we're disqualified. But I did want to mention that all of the National Associations of Trustees support Baker-Bott's position on this point, because it's not just a small expense that can be counted as overhead. In Section 7, Chapter 7 and Chapter 13 cases, these National Associations of Trustees point out that the litigation cost will frequently eat up the entire core fee, because it's a modest core fee, and all it takes is one debtor rendering an objection or the Chapter 13 trustee rendering an objection. How do you answer the question about suppose the objection to the fee is sustained? Does the lawyer nonetheless get the work? It would pass the minimal compensability threshold, but courts have consistently exercised their discretion for decades to deny that compensation, because the nature and value of an unsuccessful defense is very different from that of a successful defense. And ASARCO is the one asking this Court to make a major change from the status quo that has prevailed across this country in the overwhelming majority of jurisdictions where courts have wisely and responsibly exercised their discretion to award fees where they are necessary to make the underlying fee reasonable and to deny fees where the defense is unsuccessful or otherwise wasteful. Baker-Bott's is just asking this Court to allow the status quo to continue playing out in a way that's been effective for the bankruptcy system. Thank you, Counsel. The case is submitted.